# CHARLESTOWN.

MAGUIRE v. DOONAN.

Submitted June 17, 1884—Decided September 20, 1884.

Upon a bill filed to recover from the defendant a small sum of money, less than fifty dollars, alleged to have been received by him as guardian of the plaintiff and for a part of which he receipted for as such; but there being no other evidence that he had been appointed guardian or acted as such; and it appeared that very soon after receiving the money he paid over and

accounted to the mother of the plaintiff, her natural guardian, for the whole of it ; and there being no evidence that the plaintiff did not receive the benefit of the said money in her support and maintenance by her mother or that the defendant did not act in the utmost good faith ; nor that either the plaintiff or the mother had any other estate ; and it also appeared that the whole of said money had been paid over by the defendant more than ten years before suit was commenced. HELD :

The plaintiff was not entitled to recover ; and her bill should have been dismissed.

The facts of the case are stated in the opinion of the Court.

*J. T. McGraw* for appellant.

*H. J. Snively* for appellee.

SNYDER, JUDGE :

Suit in equity brought, December 31, 1880, in the circuit court of Taylor county by Margaret Maguire against John Doonan to recover certain sums of money alleged to have been received by the defendant, either as guardian or acting guardian of the plaintiff, which the plaintiff claims are due to her. The cause was referred to a commissioner for a report, which was duly made and returned and to which the defendant excepted, and on July 31, 1882, the court entered a decree for the plaintiff against the defendant for one hundred and twenty dollars and ten cents and costs, and the defendant appealed therefrom to this Court.

The facts presented by the pleadings and evidence are very vague and unsatisfactory. It seems, however, from the record, that sometime prior to the year 1867, Thomas Maguire died, intestate, seized of two lots of land in Taylor county, leaving as his heirs five children : Peter, Ellen, John, Mary and the plaintiff, Margaret, who was then an infant. Mary having married John Picket, she and her husband brought a suit against the heirs of Thomas Maguire, deceased, for a sale of said lots and distribution of the proceeds among the heirs; and under a decree in said suit B. F. Martin, as commissioner of the court, on May 20, 1867, sold said lots for a price which netted to each of the five heirs twenty-nine dollars and twenty-six cents, making the aggregate one hundred

and forty-six dollars and thirty cents.   Of this sum eighty-seven dollars and eighty cents, being the shares of Peter, Ellen and the plaintiff, was paid by Martin to the defendant, who gave a receipt therefor dated September 12, 1867, signed, "J. Doonan, Guardian," and at the same time, upon the orders of John Picket and wife and John Maguire, the said Martin paid over to the defendant for the benefit of said Peter, Ellen and the plaintiff fifty-eight dollars and fifty cents, the residue of said proceeds of sale, for which the defendant gave a receipt, signed, "J. Doonan."   On the same day he received said money the defendant was given a receipt by Margaret Maguire, the mother of the plaintiff, for twenty-nine dollars and sixty-four cents for " necessary goods and groceries received by her for the use and benefit " of the plaintiff.   And about November 17, 1868, in response to a letter from the mother of the plaintiff saying that her daughter, the plaintiff, was sick with small-pox in a hospital in Baltimore and wanted the money, the defendant sent to the mother twenty-six dollars, for which she afterwards gave the defendant a receipt stating that said sum was in full of her daughter, Margaret's portion.   These are all the facts in this cause.

The commissioner reported that there was no sufficient proof to show that the defendant was guardian of the plaintiff.   In this view the commissioner is fully sustained; because the only evidence even tending to show that the defendant was guardian or attempted to act as such was one of the receipts given to B. F. Martin on which he appended to his signature the word "guardian."   It seems to me, that this is insufficient to charge the defendant either as guardian or acting guardian.   This receipt embraced the money coming to the two other infant heirs as well as that of the plaintiff.   The sums due to each was too small to justify the expense of appointing guardians for these infants and, most likely, the mother, being insolvent and the commissioner, Martin, wanting to pay the money to some responsible party, paid it to the defendant as the friend of the mother and he then signed the receipt as guardian in order that it might be a formal voucher for the commissioner.   If this was not so, then it is not apparent why the receipt for the other shares which the defendant also received for the use of the

same infants was not also signed as guardian. No record was introduced showing the appointment of the defendant as guardian of any of these infants and he testifies that he never was such. But that he simply received the money and paid it over for the use of the infants to their mother and natural guardian.

It does not appear that the plaintiff or the mother had any estate except this small amount of money. None of the other heirs, either infants or adults, set up any claim against the defendant. In fact, none of them are made parties to this suit. The defendant received their money as well as that of the plaintiff and, if he was in fact guardian or could be charged as acting as such, this suit could not be maintained without making the other heirs parties— *Woodyard* v. *Buffington*, 23 W. Va. 195; *Rexroad* v. *McQuain, supra* p. 32.

The whole amount of the plaintiff's portion received by the defendant was but forty-eight dollars and seventy-seven cents and he paid over fifty-five dollars and twenty-six cents which was more than he received. He, therefore, accounted for the whole sum which came into his hands, and the only claim made by the plaintiff is that he did not pay it to her instead of her mother. It seems to me that the plaintiff would not be entitled to recover even if the defendant had been her legally appointed guardian. The proof is that it was expended for the use of the plaintiff, at least, that it was paid to the mother who had to support and care for her. In the face of the facts proved and the circumstances of these parties there can be no question that if an application had been made to the court to have this small sum paid over to the mother for the maintenance of the plaintiff, such order would have been made. And such being the fact, this Court may now ratify such payment and thus validate the payments made by the defendant— *Cunningham* v. *Cunningham*, 4 Gratt. 43; *Lincoln* v. *Stern*, 23 *Id.* 816; *Rinker* v. *Streit* 33 *Id.* 663.

In any aspect of the cause, I am clearly of opinion, therefore, that the said decree of the circuit court should be reversed with costs to the appellant and a decree entered here dismissing the plaintiff's bill.

REVERSED.   BILL DISMISSED.