# CHARLESTON:

| 50    259|
| 54    385|

| 50  259 |
| 60  335 |
| 60  373 |

## Englerth and Rowland *v.* Kellar.

Submitted September 6, 1901.   Decided November 30, 1901.

1. Will—*Devisees—Construction.*
   The will of M. E. contained the following provisions: "It is my will that my wife M. E. is to have and to hold all my real and personal property that may remain after paying all my debts as aforesaid, to be enjoyed by her during her natural life, but if at any time she may wish she shall be at liberty of selling a portion of the real estate that she may think to her interest and in that case her conveyance shall be valid." "It is my will that all property that may be in the possession of my wife at her death belonging to said estate shall be equally divided between my two children J. E. and M. E. or their nearest heirs at law." The life tenant sold all the real estate of the testator in three separate parcels, at different times, and after her death, the two children named in the will as remaindermen brought ejectment against the vendee of the last part of the land sold. *Held*: The conveyance was valid and passes the fee in the land.   (p. 261).

2. Life Tenant—*Remainder Over.*
   Where lands are given to one for life, with remainder over, and power is also given the life tenant to sell or dispose of the land, the life tenant takes the power to sell the fee.   (p. 264).

Error to Circuit Court, Berkeley County.

Action by Joseph Englerth and Margaret Rowland against Adam Kellar. Judgment for plaintiffs, and defendant brings error.

*Reversed.*

FAULKNER, WALKER & WOODS, for plaintiff in error.

FLICK, WESTENHAVER & NOLL, for defendants in error.

POFFENBARGER, JUDGE:

Joseph Englerth and Margaret Rowland brought an action of ejectment against Adam Kellar, in the circuit court of Berkeley County, in December, 1899, for the recovery of a lot of land situated in the town of Martinsburg. The defendant filed his plea of not guilty, issue was joined thereon, the matters in controversy were submitted to the court in lieu of a jury, and the court found for the plaintiffs and rendered judgment accordingly. The defendant excepted to the finding and judgment of the court, and upon his petition a writ of error was allowed by this Court. The certificate of evidence sets out the following facts, agreed upon by the parties, upon which the finding and judgment of the court are based.

Mary Hoke and William Hoke, by a deed dated April 6, 1848, conveyed to Michael Englerth parts of two contiguous lots in the town of Martinsburg, being parts of lots two hundred and twenty and two hundred and twenty-four. Michael Englerth died some time in the year 1873, leaving a last will and testament, dated April 20, 1872, which was admitted to probate on the 6th day of April, 1873. The third and fourth clauses of said will are the provisions thereof, relating to the matters in controversy in said suit. They are as follows:

3—"It is my will that my wife, Margaret Englerth, is to have and to hold all my real and personal property that may remain after paying all my debts as aforesaid, to be enjoyed by her during her natural life, but if at any time she may wish she shall be at liberty of selling a portion of the real estate that she may think to her interest and in that case her conveyance shall be valid.

4—"It is my will that all property that may be in the possession of my wife at her death belonging to said estate shall be equally divided between my two children Joseph Englerth and Margaret 'Inglerth' or their nearest heirs at law."

By a deed dated July 7, 1873, Margaret Englerth, the widow, conveyed part of said real estate to Louisa Woodruff for the sum of eight hundred and seventy-five dollars. Afterwards she executed another deed to Louisa Woodruff for the same real estate,

mentioning the same consideration. This second conveyance was made for the purpose of correcting errors of description found in the former deed. By a deed dated March 30, 1888, Margaret Englerth, in consideration of five hundred and fifty dollars, conveyed to George W. Feidt another part of the land of which her husband died seized. By a deed dated December 20, 1895, she conveyed all of the residue of the real estate of which her husband died seized to the defendant, Adam Kellar, in consideration of one thousand dollars. The land conveyed by the last deed is in the possession of the defendant, Kellar, he holding by virtue of the title conveyed to him by said last mentioned deed. Margaret Englerth died on the — day of February, 1898, and the plaintiffs, named in the declaration, are the Joseph Englerth and Margaret Englerth mentioned in the fourth clause of the will. At the time of his death, Michael Englerth owned no real estate in Berkeley County other than that conveyed as aforesaid to Louisa Woodruff, George W. Feidt and Adam Kellar.

The testator appointed his wife, Margaret Englerth, executrix of his will and expressed the desire that no security be required of her in the execution of the trust. By the second clause of the will the executrix was required to pay all of the testator's debts and funeral expenses and have his grave marked with a suitable tombstone.

The three cases involving the construction of provisions in wills, similar to that contained in the third clause of the will under consideration here, decided by this Court, are *Milhollen* v. *Rice,* 13 W. Va. 510; *Cresap* v. *Cresap,* 34 W. Va. 310; and *Wilmoth* v. *Wilmoth,* 34 W. Va. 324, but there are numerous similar cases in the Virginia reports. In none of these cases, however, did the exact question presented here arise. In the first, the provision construed was that which required so much of the personal estate of the testator, as was necessary to pay his debts and funeral expenses, to be sold and the balance of the personal property to remain on the plantation for the benefit of his wife, "To use and dispose of at her discretion during her natural life, and also to have the right of disposal at her death;" and that all the lands belonging to the testator should belong to his wife during her natural life, "To use in any way she may think proper during her life," at her death, the land to be sold and the money arising from said sale to be divided, one-half to go to

his heirs and the other half to be disposed of by his wife as she might think proper among her heirs. It was held that as to the real estate the wife took only a life estate but as to the personal property her title under the will was absolute. That case is distinguishable from the one under consideration here by the fact that the will gave the widow no power to sell any part of the real estate. Its provision was that, at her death, the land should be sold, and that she might determine to whom one-half of the proceeds should go. That she could only do by will.

In the case of *Cresap* v. *Cresap,* the language of the provision of the will construed is, "I give and bequeath to my beloved wife, A. C. C., in trust and for her support and maintenance during her life, all my estate both real and personal with full power and privilege to sell and convey any, all or so much of my real estate in such manner as she may see fit, in as full and complete manner as I myself can do, to sell and dispose of my personal estate, or so much as she may see fit for her own support, according to her condition in life, and for the benefit of my estate, so far as she may see proper." The interpretation put upon that clause was controlled by, or founded upon, the phrases, "In trust and for her support and maintenance during her life," qualifying the gift to her of the whole estate of the testator both real and personal, and the phrases, "According to her condition in life, and for the benefit of my estate so far as she may see proper," qualifying the power of sale conferred by the clause and explaining the purpose of, and reason for, such sale. No such qualification and language is found in the will which it is necessary to interpret in deciding this case. In *Wilmoth* v. *Wilmoth,* the clause, "I give and bequeath to my beloved wife, Hester A. Wilmoth, all my personal property (viz., horses, cattle, money, bonds, farming utensils, household and kitchen furniture, and everything else classed as personal property) to be hers absolutely, to be used by her in any way or manner she may wish for her own comfort and benefit of our two children Troy Wilmoth and Grace Wilmoth," was held to give the personal property to the wife absolutely and not to create a precatory trust in respect thereto in favor of the children, although there was a limitation over, in case of the death of the wife and children "without any heirs." The limitation over was held to be void.

It would perhaps be impossible to find any case in which the

exact question presented here has been determined, but some
of the principles referred to and applied in those decisions will
aid in reaching a conclusion as to the meaning of the clauses in
this will.   In *Milhollen* v. *Rice,* Judge Green says: "It is set-
tled, that if a testator gives property to a devisee or legatee, to
use and dispose of at his pleasure, that is to consume or spend,
sell or give away, at his pleasure, such devisee or legatee has the
fee simple or absolute property, even though his interest in it
be called by the will a life estate and there be a provision in the
will, whereby what may remain of the property at the death of
the devisee or legatee, is given to another person." In support
of this proposition he cites numerous cases.   Michael Englerth
gave all of his property remaining after the payment of his
debts to his wife, "to be enjoyed by her during her natural life."
The phrase, "to be enjoyed by her during her natural life," clear-
ly means no more than if the testator had said "For and during
her natural life."   The holder of a life estate has it for his en-
joyment and for the purpose of using it and for no other pur-
pose, except that he has the power to lease or sell it.   The terms
used in the proposition laid down by Judge Green as creating
an estate in fee simple, even when the estate is called a life estate
in the will, are not to be found in this part of the third clause of
this will.   They are not expressly stated nor can they be in-
ferred or implied from the words "To be enjoyed by her."   But
it is claimed that all this is included in the clause, "But if at
any time she may wish she shall be at liberty of selling a portion
of the real estate that she may think to her interest and in that
case her conveyance shall be valid."   It is insisted, by counsel for
the defendant in error, that this clause neither expressly nor im-
pliedly confers upon Mrs. Englerth the power to consume any
portion of the proceeds of the sale of the real estate, though it is
not denied that under it she may sell a portion of the real estate
and make a valid conveyance therefor.   It is further contended
that she cannot sell all of the real estate, but can make only one
such sale and, in that sale, can dispose of only a portion of the
real estate.   For the plaintiff in error, it is claimed that because
she is permitted to sell what "She may think to her interest,"
she has the power to consume all, and that proper construction
of the language, "At any time she may wish," gives her the power

to sell in such quantities and as often as her interest, in her opinion, makes it advisable to do so.

As already stated the first part of clause three of the will vests in Margaret Englerth a life estate in the land of the testator. That devise, unless changed and enlarged by other portions of the will, is absolutely certain and definite in its terms. It clearly does not belong to that class of devises, designated in the books as indefinite, such as where a testator devises land to his wife to dispose and employ the same on her and her son at her will and pleasure as in *Sutton* v. *Robertson,* Moore 57, N. 162, or, where the devise was to the testatrix's daughter for her own use, to give away at her death to whom she pleases, as in *Timewell* v. *Perkins,* 2 Atk. 103. The real question, therefore, is, does the latter part of clause three enlarge that life estate to a fee simple, or, being connected with what precedes it, does it render the devise indefinite and leave it to be gathered from the whole will that, in order to effectuate the intent of the testator appearing from the terms of the will, the devisee takes a fee simple. In *Milhollen* v. *Rice,* 13 W. Va. 523, JUDGE GREEN says *in Goodtitle* v. *Otway,* 2 Wils. Chy. as reported, the court is represented as deciding that a devise to one for life, with power to the devisee to dispose thereof at her will and pleasure, gave to the devisee a fee simple. But he says that case is badly reported and the devisee in that case was the heir to all, and the land descended to her as such, and it was unnecessary for the court to have gone further in deciding that the estate belonged to her in fee simple. He, therefore, regards the expression of opinion that the life estate was enlarged to a fee simple by the annexed power of disposition as a mere *obiter dictum.* After discussing that and some other cases, he says: "There would seem now to be no doubt, that if when a devise or bequest expressly gives a life estate, a superadded power of disposition will not enlarge the life estate into a fee simple, or make the property bequeathed absolute," and on this proposition he cites numerous cases. It must be remembered, however, that he was discussing that class of cases in which the will vests a life estate in the devisee with the power of disposing of the land after the expiration of the life estate. That was the case he was discussing and the nature of the provision he was construing. It was not a case belonging to that other class in which the devisee of the life estate is vested

with the express power to sell and convey the land. He was dis-
cussing the power given in the will to appoint, not the power to
sell, and that distinction must be borne in mind. This clearly
appears in what he says of the case of *Beachcroft* v. *Brown*, 4
T. R. 441, in which Lord Kenyon decided that in a devise to A.
and his heirs, but, if he dies without selling or disposing of the
same, or without issue, then over, A. may settle the estate in his
lifetime, and defeat the limitation over. But he says this decis-
ion proceeded, not on the ground that the life tenant had a fee
simple, but on the ground that he had the power to settle the
estate, which power he had exercised. In further illustration of
this, as well as of the distinction between a gift for life, with a
power of disposition, and a gift to one indefinitely, with a super-
added power to dispose, he quotes the following from Judge
Tucker, delivering the opinion of the court in *Burwell* v. *Ander-
son*, 3 Leigh 356: "A devise to A., to dispose of at his will and
pleasure, gives a fee simple; but a devise to the wife for life,
and after her decease she to give the same to whom she will,
passes but a life estate with a power. When such inconsistent
life estate is given, the fee does not pass, for the whole matter
rests upon intention." The first case put, in this quotation from
Judge Tucker, is settled by the statute. "Where any real estate
is conveyed, devised or granted to any person without any words
or limitation, such devise, conveyance, or grant shall be con-
strued to pass the fee simple or the whole estate or interest which
the testator or grantor had power to dispose of in such real estate,
unless a contrary intention shall appear by the will, conveyance
or grant." Code, chapter 71, section 8. At common law, a mere
devise to A., without words of limitation, would have passed only
a life estate, unless a contrary intention appeared by the will,
and the words, "to dispose of at his will and pleasure," would no
doubt be sufficient to show such intention.

The provision under consideration here does not fall within
either of these classes. It is not an indefinite gift, as defined by
the foregoing authorities, nor of a life estate with the power of
disposition after the expiration of the life estate. It is certain
in this, that it vests a life estate in the donee. It vests in her,
also, the power to sell a portion of the land and make a valid
conveyance thereof, and this she may do, not by way of appoint-
ment to take effect after the expiration of her life estate, but at
any time by sale and conveyance.

These two certain provisions, in no sense ambiguous or repugnant to each other or inconsistent with each other, clearly distinguish this case from a number of cases in which it is held that where a power of disposition accompanies a bequest or devise of a life estate, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power was intended. 20 Am. & Eng. Ency. Law 961. Among the cases establishing this doctrine are *Brant* v. *Virginia Coal & Iron Co.,* 93 U. S. 344, and *Smith* v. *Bell,* 6 Pet. (U. S.) 68. In the former, the testator gave his wife all of his estate, real and personal, "To have and to hold during her life, to do with as she sees proper before her death," and it was held that the wife took a life estate in the property, with only such power as a life tenant can have, and that her conveyance of the real estate passed no greater interest than a life estate. It will be noticed that no express power of sale was given in that will, as is the case here. Mr. Justice Field, speaking of the words, "To do with as she sees proper before her death," says: "They would never be understood as conferring the power to sell the property so as to pass a greater estate," when used in connection with the conveyance of a leasehold estate. The court, therefore, held that in the will there was neither an express nor an implied power to sell. In *Smith* v. *Bell,* the bequest was of presonal property, to which were added the words, "Which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to have for her own use and benefit and disposal absolutely," and then there was a gift over. The court held that the gift over was alone sufficient to restrain the bequest of personality to, and for, the legatee's "Own use and disposal absolutely" to a life estate with a power of disposition over the income only. The words, "use and disposal absolutely," were clearly susceptible of construction, and did not necessarily mean that a sale of the property might be made. The court, therefore, in construing the will and giving effect to all its parts, looking to the entire scheme and full intent of the testator, declined to hold that they created a power of sale, final disposition and consumption, in the donee. But it is impossible to dispose of this case upon the reasoning employed in the case of *Smith* v. *Bell.* The language we have here cannot be construed to mean mere custody, control and use of the property, for the clause expressly

empowers the devisee to sell a portion of the real estate and make a valid conveyance thereof. It is not open to construction. It is a power expressly conferred in connection with the estate given.

The same provisions class the case with a long line of others in which it has been held that where lands are given to one for life, with remainder over and power is also given to the life tenant to sell or dispose of the land, the life tenant takes a power to sell the fee. 18 Am. & Eng. Ency. Law 904; *Downie* v. *Downie,* 9 Bis. ( U. S.) 23; *McGavock* v. *Pugsley,* 1 Tenn. 410; *Bishop* v. *Remple,* 11 Ohio St. 277; *Shaw* v. *Hussy,* 41 Me. 495; *Lillard* v. *Robinson,* 3 Litt. (Ky.) 415; *Benesch* v. *Clark et als.,* 49 Md. 497; *Forsythe* v. *Forsythe,* Pa. St. 129; *Crozier* v. *Hoyt,* 97 Ill. 23; *Markillie* v. *Ragland,* 77 Ill. 98; *Dodge* v. *Moore,* 100 Mass. 335. In some of these cases it clearly appears that the courts do not regard the power of sale as having enlarged the life estate, expressly conferred, into an estate in fee simple. Thus in *Benesch* v. *Clark,* the court holds, "First, that where an estate is given to a person generally or indefinitely with power of disposition, such gift carries the entire estate; and the devisee or legatee takes, not a simple power, but the property absolutely. Second, that when the property is given to a person expressly for life, and there be annexed to such gift a power of disposition of the reversion, there the rule is different, and the first taker takes but an estate for life, with the power annexed." In that case the life tenant conveyed the property in question by deed, as did the life tenant in this case, and the court held that her power of disposition was well executed. In *Lewis* v. *Palmer,* 46 Conn. 454, the devise was as follows: "I give to my sister S. the use of all the rest of my real estate during her natural life and for her to dispose of as she may think proper." This devisee had conveyed the property in her life time, and the court, without deciding whether she took a life estate or an estate in fee, held that by her deed she conveyed the land in fee. Carpenter, J., in the opinion said: "We find no case where a life estate created by express words is enlarged to a fee by the power of sale. There are cases where there is an apparent life estate with power of disposal, but without any disposition of the remainder, in which it is held that the devisee takes a fee. There are other cases where there is a devise of an estate generally, with an ex-

press power to sell, in which it is held that the devise over the
remainder is void for repugnancy. But we think none of the
cases go so far as to disregard the obvious and acknowledged
intention of the testator. All seem to regard that when discov-
ered as conclusive."

The power of sale given in this will, as to a portion of the
real estate of the testator, is unqualified and unrestricted in any
way. The testator intended that she should, in case she desired
to do so, sell a portion of the real estate and make a valid con-
veyance thereof, without any reference whatever to any circum-
stance or contingency over which she did not possess control.
Her power was not made dependent upon her comfort or neces-
sities. To sell at any time that she might wish to do so, was the
broad power conferred upon her. That distinguishes this case
from a vast number of others in which the execution of the
power is, by the terms of the will, made to depend upon some
future contingency, such as that in *Stevenson* v. *Winship,* 1 Pick.
(Mass.) 318.

Having such absolute power of sale as to a portion of the real
estate it remains to inquire whether she might make several con-
veyances of different portions of it and thus dispose of all of it.
The will expressly says she may sell "A portion of the real estate
that she might think to her interest and in that case her con-
veyance shall be valid." Who is to determine how much she
may sell? She alone. Clearly she has the right to sell prac-
tically all of it, and not thereby violate the letter or spirit of the
third clause of the will. It is wholly immaterial that she sell
and convey in separate portions and to different persons, and at
different times. After making her two first conveyances she had
only disposed of a portion of the land. To say that because the
will speaks of "a portion," not portions, and "her conveyance,"
not conveyances, only one sale and conveyance could be made
is very technical and clearly not in harmony with the principles
governing the construction of wills. She might have found it
impossible, at the time she made her first conveyance, to dispose
of such an amount of the land at a fair price, as she desired to
sell, or as she might have thought it to be "to her interest to
sell;" but, having opportunity to dispose of a smaller portion at
that time at a fair price, no good reason is perceived why she
might not make that sale and another sale of an additional

amount at another time and to another person; for, in that case, she would still have disposed of only a portion of the land. The testator clearly did not mean that the language of this will should determine the mode and manner of exercising the power of sale. Its provisions, on their face, show that their office is to determine what she might do, not how she might effectuate it. Having the power thus to dispose of such portion of the land as she alone, without restriction or hindrance, might determine to sell, as clearly she had, that power was sufficient to include, by its terms, the whole beneficiary interest in the land; for she might have disposed of all of it except one single square foot, which would have been absolutely worthless to any one, and still have acted within the terms of the instrument conferring that power. Mrs. Englerth, therefore, had the power to sell the land and her conveyance of the last portion thereof to the defendant, Adam Kellar, was a good and valid conveyance.

Whether the widow, having the power to convert all the real estate into personal property, by sale and conveyance thereof, had authority, under the will, to consume the principal of that estate, or was confined to the use of the rents, issues and profits thereof, is a question not involved in this controversy. Whether the life estate, expressly conferred, was enlarged, by the power of sale, to an estate in fee, it is unnecessary to decide, as has been shown. The intention of the testator as to whether Mrs. Englerth might consume the proceeds of the land, or should be confined to the use of the income to be derived from the fund, created by the sale, in no way affects the validity of her conveyances. Whether her estate under the will was in fee or only for life, that instrument empowered her to determine, in her own interest, whether she would sell the land. Assuming that she was only a tenant for life, it was in her discretion to say whether the income from the money would better subserve her interests than the rents, issues and profits of the land, and to act accordingly. If she wrongfully consumed the *corpus* of the estate, the hardship resulting therefrom cannot be permitted to govern the construction of the will.

The judgment of the circuit court is, therefore, erroneous, and must be reversed, and, as the case stands here as upon a demurrer to the evidence, judgment must be entered for the defendant.

*Reversed.*