# CHARLESTON

## MORGAN v. MORGAN et al.

Submitted March 13, 1906.    Decided October 23, 1906.

1. DEEDS—*Construction—Inconsistent Provisions—Estate Conveyed.*
    A will or deed containing two inconsistent provisions, one indicating that a life estate only in real estate is intended to be conveyed to a person, and the other giving or granting to such person an absolute and unlimited power of alienation and disposition of such estate in fee simple, will be held to pass a life estate, or the fee simple, as the one or the other may appear to be the primary intention disclosed by a consideration of the whole instrument.  (p. 332.)

2. TRUSTS—*Trust Deed—Estate of Cestui Que Trust—Equitable Estate in Fee Simple.*
    A deed made on the 30th day of July, 1869, in which C. Leander Zane was the party of the first part, John Morgan, Jr., trustee, was the party of the second part, and Louisa Morgan, wife of John Morgan, Sr., was the party of the third part, whereby Zane conveyed to said trustee a certain tract of land—"to have and to hold the said tract or parcel of land to the said party of the second part upon trust that said trustee shall permit the said party of the third part, to occupy, possess and enjoy the said tract or parcel of land and the rents, issues and profits thereof to take for her sole use and benefit free and clear from all manner of charge and incumbrance of her said husband or any husband she may hereafter take, for and during her life, and upon the further trust that the said party of the second part shall sell or otherwise dispose of the said property at such time,

in such manner and upon such terms of credit or otherwise as said party of the third part by writing signed with her name shall appoint and direct, upon this further trust that should the said party die without having directed and completed any sale of said property and her said husband John Morgan survive her, then said party of the second part shall reconvey the said property to the said John Morgan in fee, and upon the further trust that should the said party of the third part survive her said husband and die without having sold said property as hereinbefore empowered, then the said party of the second part shall hold said property in trust for the heirs of said John Morgan" —passed an equitable estate in fee simple in said land to the wife, Louisa Morgan. (p. 329.)

3. SAME—*Limitation Over—Repugnancy.*

The attempted limitation over after the death of Louisa Morgan, was inoperative and void for repugnancy and uncertainty, (p. 337.)

4. SAME—*Conveyance by Beneficiary.*

After such deed was made, the wife, Louisa Morgan, had full power to convey her equitable estate in fee by deed, in which her husband joined as provided by statute, without direction to, or the intervention of, the trustee named in the deed from Zane. (p. 337.)

5. SAME.

John Morgan, Jr., the trustee, and John Morgan, Sr., having died, and Louisa, the widow, having remarried, a deed made by her and her last husband to her son, James P Morgan, conveying to him all the right, title and interest of said Louisa and husband in and to the land conveyed by the deed from Zane, except the part previously conveyed to Hupp, passed an equitable estate in fee to the son, James P. Morgan. (p. 338.)

6. CONVEYANCE OF LEGAL TITLE.

James P. Morgan is entitled to a conveyance, by a trustee appointed in this suit, in the place of John Morgan, Jr., of the legal title to the land, in which he (James P. Morgan) holds the equitable estate in fee under the deed from his mother and her last husband. (p. 338.)

Appeal from Circuit Court, Ohio County.

Bill by James P. Morgan against S. Brady Morgan and others. Decree for defendants, and plaintiff appeals.

*Reversed. Remanded.*

JOSEPH R. NAYLOR and JAMES W. EWING, for appellant.

HENRY M. RUSSELL, for appellees.

COX, JUDGE:

James P. Morgan complains of a decree of the circuit court of Ohio county, dismissing his bill of complaint filed against S. Brady Morgan, Henry Morgan, Archie Morgan, Brady H. Morgan and Amy E. Roe, for the purpose of having a trustee appointed and a conveyance by such trustee of the legal title to certain real estate, hereinafter mentioned, to him, the said James P. Morgan.

The material facts appearing from the record are the following: By deed dated the 30th day of July, A. D., 1869, in which C. Leander Zane was the party of the first part, John Morgan, Jr., trustee, was the party of the second part, and Louisa Morgan, wife of John Morgan, was the party of the third part, Zane conveyed to said trustee a certain tract of land on Zane's Island in the city of Wheeling, "to have and to hold the said tract or parcel of land to the said party of the second part (1) upon trust that said trustee shall permit the said party of the third part to occupy, possess and enjoy the said tract or parcel of land and the rents, issues and profits thereof to take for her sole use and benefit free and clear from all manner of charge and incumbrance of her said husband or any husband she may hereafter take, for and during her life, (2) and upon the further trust that the said party of the second part shall sell or otherwise dispose of said property at such time, in such manner and upon such terms of credit or otherwise as said party of the third part by writing signed with her name shall appoint and direct, (3) upon this further trust that should the said party die without having directed and completed any sale of said property and her said husband John Morgan survive her, then said party of the second part shall reconvey the said property to the said John Morgan in fee, (4) and upon the further trust that should the said party of the third part survive her said husband and die without having sold said property as hereinbefore empowered then the said party of the second part shall hold said property in trust for the heirs of said John Morgan." The figures (1), (2), (3) and (4) above are not found in the original, but are inserted to indicate the several parts or clauses into which the provision of the deed above quoted is divided for consideration hereinafter. These clauses will be referred

to as the first, second, third and fourth, corresponding to· said figures.

John Morgan, Jr., trustee, was the son of John Morgan, the husband. By joint deed dated the 7th day of August, 1876, John Morgan, Jr., trustee, John Morgan, Sr., and Louisa Morgan, the wife, conveyed a part of said tract of land to John C. Hupp. That part is not involved in this suit.

On the third day of September, 1876, John Morgan, Sr., died, leaving surviving him his widow, Louisa, and his children, John Morgan, Jr., and the defendants S. Brady Morgan, Henry Morgan and the plaintiff James P. Morgan, the plaintiff being his child by his marriage with Louisa, and the others being his children by a former marriage.

In the year 1878, John Morgan, Jr., died, leaving surviving him a widow, who afterwards died, and his only children and heirs at law, the defendants, Archie Morgan, Brady H. Morgan and Amy E. Roe (formerly Morgan.)

Subsequently, Louisa Morgan, the widow of John Morgan, Sr., intermarried with one Geo. W. Barnes; and on the 17th day of January, 1901, the said Louisa and Geo. W. Barnes, her husband, made a deed of conveyance to James P. Morgan, her son, · conveying, among other parcels of real estate, all the right, title and interest of the said Louisa Barnes and husband in and to the tract of land conveyed by Zane to John Morgan, Jr., trustee, except that part previously conveyed to Hupp. Louisa Barnes died previous. to the institution of this suit. Other facts appear, but only those which we deem material have been mentioned.

The plaintiff contends that the deed from Louisa Barnes. and husband to the plaintiff, James P. Morgan, passed to· him an equitable estate in fee simple in the land conveyed . by the Zane deed, except that part which had previously been conveyed to Hupp. The defendants contend that if the deed passed anything it passed no more than an equitable estate for the life of Louisa Barnes, and that they, together with the plaintiff, as the heirs of John Morgan, Sr., are now, Louisa Morgan being dead, entitled to the land. in fee.

This controversy involves the construction of the Zane deed, or more especially the provision above quoted which imposed the trust upon John Morgan, Jr., the trustee.

In construing the deed, all its provisions must be considered together. The words are to be taken in their usual and ordinary sense, unless it appears that they were used in a technical or special sense or unless when applied to the subject matter they have a technical or special meaning. The intention of the parties to the deed is paramount and controlling, so far as that intention is within the law. The several clauses in this provision above indicated by figures in parentheses occupy positions of equal prominence and importance in the deed. The second clause mentioned involves the right of the wife of John Morgan, Sr., to sell and dispose of the land, or to have that done by the trustee. This clause, standing alone, gave to her the absolute and unlimited power of sale and disposition, at such time, in such manner and upon such terms as she should direct. Its sweeping language gave absolute and unlimited power of sale and disposition of the land in fee, at the will and pleasure of the wife. We apprehend that no contention can be made, if the second clause stood alone, that the power of disposition was not absolute and unlimited if exercised in conformity to the deed. This absolute and unlimited power of disposition meant absolute power and control over the land. Alone, it gave an equitable estate in fee simple to the wife, the legal title being conveyed to a trustee. In speaking of the provisions of a will, Judge Tucker in *Burwell's Exors.* v. *Anderson, Admr.*, 3 Leigh 348, says: "From the earliest time, it has been among the received doctrines of the common law, that an absolute and unqualified power of disposing, conferred by will, and not controlled or explained by any other provision, should be considered as a gift of the absolute property. In this the law but corresponds with the dictates of common reason. Every man of ordinary capacity would understand a power to dispose of a thing as he pleased as a gift of the thing itself; and hence, every one who uses the phrase without qualification, is understood by the law as intending a gift. The power of absolute disposition is, indeed, the eminent quality of absolute property.

He who has the absolute property, has inseparably the ab-
:solute power over it; and he to whom is given the absolute
power over an estate, acquires thereby the absolute property;
unless there is something in the gift which negatives and
overthrows this otherwise irresistible implication." See, to
the same effect, *Davis* v. *Heppert*, 96 Va. 775; *Farrish*,
*Trustee*, v. *Wayman*, 91 Va. 430. In *Davis* v. *Heppert*, it
is said: "A line of decisions of this court from *May* v.
*Joynes* to *Farrish* v. *Wayman* establishes the doctrine, well
stated by Judge Burks, that 'though property is devised or
bequeathed to one for life, even in the most express terms,
yet if by other terms in the same instrument it is manifest
that the devisee or legatee is invested with absolute power to
dispose of the subject at his will and pleasure, he is not a
mere life tenant, but absolute owner; for there can be no
better definition of absolute ownership than absolute do-
minion." This second clause of the provision of the deed
under consideration is preceded by a clause requiring the
trustee to permit the wife to occupy, possess and enjoy the
land and the rents, issues and profits thereof for her sole
use and benefit free, etc., for and during her life, and suc-
ceeded by clauses intended to create a limitation over after
the wife's death in case she should not exercise the power of
disposition. Do these provisions cut down the wife's estate
to an equitable estate for her life?

Judge Green, delivering the opinion of this Court in
*Milhollen* v. *Rice et al.*, 13 W. Va. 510, in which the provis-
ions of a will were under consideration, laid down two
propositions which he considered established. First, that "it
is settled that if a testator gives property to a devisee or
legatee, to use or dispose of at his pleasure, that is, to com-
sume or spend, sell or give away at his pleasure, such dev-
isee or legatee has the fee simple or absolute property, even
though his interest in it be called by the will a life estate,
and there be a provision in the will whereby what may re-
main of the property at the death of the devisee or legatee,
is given to another person." Second, that "there would
seem now to be no doubt, that if when a devise or bequest
expressly gives a life estate, a superadded power of dispo-
sition will not enlarge the life estate into a fee simple, or
make the property bequeathed absolute." Many authorities

are cited for both of these propositions.   It will be observed
that one difference in the two propositions relative to life
estates is that the first would seem to relate to a case where
the power of disposition is contained in the clause by which
the gift is made, while the second proposition would seem
to relate to a case where the power of disposition is contained
in a superadded clause.   We conceive that this difference
can only be material upon the question of intent.   There-
fore, if the absolute and unlimited power of disposition at
pleasure, whether contained in the same clause in which the
gift is made or in a superadded clause, appears to be the
primary or dominant intent disclosed by a consideration of
the whole instrument, that is, intended to prevail over the
words indicating a life estate, it will be given that effect.
After an examination of many authorities, English and
American, including those of Virginia and of this State, we
think that the two propositions laid down by Judge Green
mean simply that effect will be given to the primary or dom-
inant intent to be ascertained from all the provisions of the
instrument.   A primary or dominant intent must prevail
over a secondary intent, where the two are inconsistent.
This rule as to primary or dominant intent is expressed in
different language by different authorities.   By some the
primary intent is termed the general intent, by others the
paramount intent.   2 Page on Cont., section 1113; Clark
on Cont. 290; 9 Cyc. 583; Washburn on Real Prop., section.
2314; 2 Devlin on Deeds, section 840.   The effect of this
rule is that where two clauses are inconsistent, they must be
construed so as to give effect to the intention of the parties.
as collected from the whole instrument. '9 Cyc. 583; *Tuck·*
v. *Singer Mfg. Co.*, 67 Ia. 67.   If the primary or dominant
intent be to create a life estate, then such intent will prevail
over words indicating an absolute and unlimited power of
disposition; and *vice versa*, if the absolute and unlimited
power of disposition appears to be the primary or dominant
intent of the instrument, then a fee simple estate will be
thereby created.   In *Burwell's exors.* v. *Anderson's admr.*,
and other cases, it is recognized that the gift of a life estate,
and also of an absolute and unlimited power of disposition,
are inconsistent provisions.   Therefore, effect will be given
to the one or the other according to the primary or dominant

intent of the whole instrument. We think that the principle, that effect must be given to the manifest primary intent, underlies all the decisions on this subject. This seems to be what was meant by Chancellor Kent in *Jackson* v. *Robbins*, 16 Johns. (N. Y.) 537, where, after a review of the English and American cases, he says: "We may lay it down as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is, where the testator gives to the first taker an estate for life *only*, by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of the power of disposition of the reversion." We take it that the expression "by certain and express words" means that the intent to give a life estate must be clearly stated, or, in other words, be the primary or dominant intent. The same idea is expressed by Judge Tucker in *Burwell's Exors.* v. *Anderson, Admr.*, in these words: "Where indeed such an inconsistent life estate is given, the fee does not pass, for this whole matter rests upon intention. The estate being the testator's to give, his will is the law of the subject, unless that will is against the law of the land."

Following this idea of primary or dominant intent, we find two classes of cases, both English and American, construing words indicating a life estate, and also words indicating an absolute and unlimited power of disposition contained in the same instrument, one class permitting the power of disposition to prevail, and the other permitting a life estate to prevail. *Milhollen* v. *Rice*, 13 W. Va. 510; *Shermer* v. *Shermer*, 1 Wash. (Va.) 266; same, 1 Wythe 159; *Guthrie* v. *Guthrie*, 1 Call. 7; *Riddick* v. *Cohoon*, 4 Rand. (Va.) 547; *Burwell* v. *Anderson*, 3 Leigh (Va.) 348; *Melson* v. *Cooper*, 4 Leigh (Va.) 408; *Brown* v. *George*, 6 Grat. (Va.) 424; *May* v. *Joynes*, 20 Grat. 692; *Carr* v. *Effinger*, 78 Va. 197; *Cole* v. *Cole*, 79 Va. 251; *Bowen* v. *Bowen*, 87 Va. 438; *Hall* v. *Palmer*, 87 Va. 354; *Farish* v. *Wayman*, 91 Va. 430; *Davis* v. *Heppert*, 96 Va. 775; *Brown's Gdn.* v. *Strother's Admr.*, 102 Va. 145; *Jackson* v. *Robins*, 16 Johns. (N. Y.) 537; *Atty. Gen.* v. *Hall*,

Fitzg, .314; *Benferd* v. *Street*, 16 Ves. 135;  *Irwin* v. *Farrer*, 19 Ves. 86; *Ide* v. *Ide*, 5 Mass. 500;  *Wilmoth* v. *Wilmoth*, 34 W. Va. 426; *Bank of Berkeley Springs* v. *Green*, 45 W. Va. 168; *Cresap* v. *Cresap*, 34 W. Va. 310; *Englerth et al* .v. *Kellar*, 50 W. Va. 259; *Smith* v. *Schlegel*, 51 W. Va. 245; *Madden* v. *Madden*, 2 Leigh (Va.) 377; *Missinary Society* v. *Calvert*, 32 Grat. (Va.) 357; *Lee* v. *Law*, (Va.) 19 S. E. 255; *Miller* v. *Potterfield*, 86 Va. 877; *Johns* v. *Johns*, 86 Va. 333; *Smythe* v. *Smythe*. 90 Va. 638; *Smith* v. *Bell*, 6 Pet. (U. S.) 68; *Brant* v. *Va. Coal and Iron Co.*, 93 U. S. 126; *Giles* v. *Little*, 104 U. S. 291; *Jackson* v. *Bull*, 10 Johns. (N. Y.) 19; *Bradley* v. *Wescott*, 13 Ves. 453; *Goodtitle* v. *Otway*, 2 Wils. 6. The first twenty cases cited are especially applicable to this case, and we think fully sustain the conclusion we have reached.

It seems to us that the tendency of the later cases, and especially those of Virginia, is to eliminate all distinction between a gift or grant to one indefinite with absolute and unlimited power of disposition, and a gift or grant to one for life with a superadded absolute and unlimited power of disposition, and to give effect, as the primary and dominant intent, to the absolute and unlimited power of disposition in all cases. Thus, we find it stated in broad language in *Davis* v. *Heppert*, 96 Va. 775: "An estate for life, coupled with the absolute and unlimited power of alienation of the fee, express or implied, comprehends everything, and constitutes a fee simple estate." To the same effect are *Brown's Gdn.* v. *Strother's Admr.*, 102 Va. 145, and *Farish, Trustee* v. *Wayman, Trustee*, 91 Va. 430. In the latter case, Judge Harrison, speaking for the court, says: "It cannot be longer doubted that the law is settled by the courts and text writers everywhere, of the highest authority, that an estate for life, coupled with the absolute power of alienation, either express, or implied, comprehends everything, and the devisee takes the fee." The later Virginia cases appeal to us with peculiar force owing to the fact that they were decided upon consideration of the early Virginia cases, which are law alike in the two Virginias. Whether this be the correct view or not, the primary or dominant intent must prevail; and it may be said that the cases of *Milhollen* v. *Rice* and *Burwell's Exors*, v. *Anderson, Admr.*, do recognize the distinction mentioned.

In the case at bar, the land was granted by Zane to a trustee. The wife of John Morgan, Sr., was the third party to the deed. It may be contended that the first clause above mentioned indicated a life estate in the wife.   Is this necessarily true, upon consideration of the whole deed?   We are inclined to think that the principal object of the first clause was to take the possession, rents, issues and profits of the land from the trustee during the life of the wife, and to give them to the wife in the first instance, leaving the trustee without right to possession.   The language used is that the trustee shall permit the wife to occupy, possess and enjoy.   This clause defines the duty of the trustee, rather than the quantity and extent of the wife's estate. It appears to us that it was not the intent of this clause to limit the wife's equitable estate to an estate for her life. If this be incorrect, we are then clearly of the opinion that it was not the intent of this clause to limit the effect of the second clause, which gave absolute and unlimited power of sale and disposition.   We think that this absolute and unlimited power of disposition was manifestly the primary intent upon consideration of the whole deed, notwithstanding that the clause taking the possession from the trustee may have indicated a life estate in the wife if it stood alone. The words of the third and fourth clauses assist in reaching this conclusion.   In the third clause it is said "should the said party (wife) die without having directed and completed any sale of said property," and in the fourth clause "should the said party of the third part (wife) survive her said husband and die without having sold said property as hereinbefore empowered."   These words show plainly that it was contemplated that the absolute and unlimited power of disposition might be exercised, and that there might be nothing left upon which the limitation over could operate.   The third and fourth clauses were thus made subject to the exercise of the power of disposition under the second clause.

Our view of the true construction of the whole provision of the Zane deed imposing the trust is that it was the intention by the first clause to take the possession, rents, issues, and profits from the trustee and give them to the wife in the first instance during her life, and not to define the

quantity or extent of the wife's estate; that it was the intention by the second clause to give an absolute and unlimited power of disposition to the wife, which necessarily implies an equitable estate in fee simple; and that it was the intention by the third and fourth clauses to create a limitation over if the power of disposition should not be exercised. As we have said, if in error as to the intent of the first clause, still the second must prevail as the primary or dominant intent of the whole provision. Applying this construction, we hold that the wife took an equitable estate in fee in the land conveyed by the Zane deed. Her equitable estate being in fee, the limitation over indicated by the third and fourth clauses was inoperative and void for repugnancy and uncertainty under all the authorities in this State and Virginia. The intent to create a limitation over, not being within the law, failed. The first taker took all, and nothing remained for the second. See the following cases before cited; *Guthrie* v. *Guthrie, Jackson* v. *Robins, Atty. Gen.* v. *Hall, Ide* v. *Ide, Riddick* v. *Cohoon, Melson* v. *Cooper, Mays,* v. *Joynes et al., Cole* v. *Cole, Hall* v. *Palmer, Missionary Society* v. *Calvert, Farish* v. *Wayman,* and other cases. See also *Roberts* v. *Roberts,* (Md.) 1 L. R. A. (U. S.) 1, and note.

It is contended that the wife could not exercise the absolute and unlimited power of disposition in any other manner than that provided by the deed, that is, upon written direction to, and by the intervention of, the trustee. It will be observed that the Zane deed was made on the 30th of July, 1869. The trust imposed thereby upon John Morgan, Jr., trustee, was passive, not active. He held only the legal title without possession. The wife's equitable estate in the land conveyed by the Zane deed was her separate estate, and, being an equitable estate in fee, the right to convey it attended as an incident. By the express terms of the deed, as well as incidental to her estate, she had the *jus disponendi.* In equity, she was the owner of the land, and could convey her equitable estate according to the statute. See *Radford* v. *Carwile,* 13 W. Va. 572; Perry on Trusts 520, 667; 1 Bishop on Law of Married Women, sections 852, 865, 867; *Jones* v. *Tatum,* 19 Grat. 733. In this feature of the case, and as to the effect of our present constitution and the legislation thereunder, the case of *Johnson* v. *Sanger,* 49 W. Va.

405, is controlling. It is unnecessary to repeat the argument there made to show that Louisa Barnes, by a deed in which her husband joined, had the right to convey her equitable estate in fee, without direction to or the intervention of the trustee. The deed from Louisa Barnes and husband to the plaintiff used the words "all the right, title and interest" of the grantors. It is said that this is a very guarded expression, and is limited and restricted in effect. Undoubtedly, the grant of all the right, title and interest of the grantors passed whatever estate the grantors had at the time the deed was made; and if the grantor Louisa Barnes had an equitable estate in fee, the grant was sufficient to pass that equitable estate. Sheppard's Touchstone 98. Any interest in or claim to real estate may be disposed of by will or deed. Code, chapter 71, section 5. It follows that all the interest of a party or parties may be so disposed of.

We conclude, then, that the deed from Louisa Barnes and husband to the plaintiff, her son, passed an equitable estate in fee simple in the land conveyed by the Zane deed not previously conveyed to Hupp. This being true, and the trustee being dead, the plaintiff is entitled to have another trustee appointed in this suit and to have a conveyance from him of the legal title to the land, in which the plaintiff already has the equitable title in fee. As said by JUDGE BRANNON in *Johnson* v. *Sanger:* "She could sell and convey the land, and compel the trustee to pass the legal title to her alienee by uniting in the deed, or by separate deed, or the purchaser under a deed from her and her husband could do so."

For the reasons stated, the decree complained of is reversed, and this cause is remanded, to be further proceeded with according to the principles herein announced and the rules governing courts of equity.

*Reversed. Remanded.*