ADA M. HUSTEAD *v.* CHARLES W. MURRAY

(No. 7994)

Submitted November 15, 1934.   Decided December 11, 1934.

*Smith & Smith,* for appellant.
*W. M. Conaway* and *J. O. T. Tidler,* for appellee.

KENNA, JUDGE:

Ada M. Hustead complains of a decree of the circuit court of Harrison County finding against her and dismissing her bill of complaint in a chancery cause brought by her against the defendant, Charles W. Murray. The substantial averments of her bill of complaint are that she is, by adoption, the only child of Lewis C. Hustead and Rosalie Hustead, who were each during their lifetime possessed of real and personal property situated in Harrison County. The averment is that on the 20th day of April, 1926, Lewis C. Hustead and Rosalie Hustead executed wills containing identical provisions. It is alleged that prior to entering into the wills the testators

had agreed and contracted with each other that the property of the first to die should become the property of the survivor for life, and that at the death of the survivor the property of both should become the property of Ada M. Hustead, their daughter, and that the wills executed by each of them on the 20th day of April, 1926, were intended to carry it out in all respects. The bill alleges that the contract so made was never altered nor modified during the lifetime of Lewis C. Hustead. It is alleged that Lewis C. Hustead died without revoking his will and while the will executed by Rosalie Hustead was still in existence unmodified; that Rosalie Hustead procured the benefits of the entire provisions of the will of Lewis C. Hustead, and that after having done so, she undertook to execute a will bequeathing and devising to the defendant, Charles W. Murray, all of the property held by her under the will of her husband as well as the property owned by her in her own right.

Lewis C. Hustead died May 8, 1926, and Rosalie Hustead died September 1, 1928. Rosalie Hustead left a will naming Charles W. Murray as sole legatee and devisee. The bill of complaint, as originally drafted, contained averments of incapacity and undue influence, and prayed in the alternative that an issue *devisavit vel non* be tried, that the bill of complaint be treated as an appeal from the order of probate, and that the alleged agreement entered into between the testators be specifically enforced. A demurrer was sustained on the ground of multifariousness to this original bill, and amendment was permitted restricting the scope of the bill to its prayer that the contract for the making of the wills be specifically enforced and given effect, and that the said contract be probated instead of the will to Charles W. Murray. A large amount of proof, all parol, was taken with a view to establishing the contract to make wills that is alleged in the bill of complaint, and with a view to contesting the existence of such a contract. The appellee here assigns as cross-error the failure of the trial chancellor to dismiss the bill of complaint upon the sustaining of the demurrer for multifariousness. Ordinarily, it is the rule

to dismiss a bill of complaint when a demurrer for multifariousness is sustained, but this rule is not free from exception, and where the interests of substantial justice appear to be promoted by permitting amendment and retaining the bill of complaint as amended, the trial chancellor is at liberty to do so. *Morris* v. *Scruggs*, 147 Va. 166, 136 S. E. 655.

The learned trial chancellor based his decree primarily upon the proposition that under our West Virginia rule, in a deed or will where an apparent life estate is coupled with an absolute power of disposition in the first taker, either expressed or clearly implied, the first estate is raised to a fee simple; and that being true, in this case, parol evidence cannot alter or vary the terms of the written instruments, nor be heard under the statute of frauds to make a different disposition of the property; that under the true construction of the wills in question, fee simple estates were devised, respectively, and that the purpose to make Ada M. Hustead the second taker after the apparent life estate, being clearly subordinate to the dominant purpose to vest a fee simple estate in the first taker, all interest in Ada M. Hustead necessarily fails. We believe that the learned trial chancellor was correct in this decision.

The language contained in the two wills upon which this decision turns is the following:

> "I give, devise and bequeath to my wife, Rosalie Hustead, all of my property, both personal property and real estate, of which I *my* die seized and possessed, she to have the right and privilege to use, sell or dispose of the same as she may see fit during her lifetime, but any personal property or real estate remaining at her death shall by this will become the property of my daughter, Ada M. Hustead."

The appellant relies with great force and plausibility upon the case of *Smith* v. *Bell*, U. S. 6 Peters 68, 8 L. Ed. 322, in which Chief Justice Marshall wrote the opinion for the court sustaining a remainder over to a son, in a

will that devised property to the wife "to and for her own use and benefit and disposal absolutely." We do not here attempt to dispute the logic of the conclusion reached by that eminent legal reasoner, but only to say that in our opinion this court has heretofore by a long and definite line of cases established a rule at variance with it, from which we do not consider ourselves at liberty to depart. In *Raines* v. *Heslip*, 113 W. Va. 870, 169 S. E. 617, it is pointed out that there has not been entire harmony in the West Virginia cases on this question, but in that connection it is stated in the form of a quotation from *Wiant* v. *Lynch*, 104 W. Va. 507, 140 S. E. 487, that the cases harmonize to the extent of holding that "where property is willed to a beneficiary for life, but he is given unlimited power of disposal, his estate is absolute. If not expressly stated, the power of disposal must be clearly implied." Without attempting the unnecessary task of reviewing all of the cases that have been reviewed so often in this state, we may safely say that there is no divergence in the West Virginia cases upon the proposition that where this conflict arises in the provisions of either a deed or will, the dominant purpose of the grantor or testator is the controlling element. If that intent is to make the apparent life estate subordinate to the absolute power of disposal, in the life tenant, then a fee is created. If, on the other hand, the power of disposal is limited or restricted so as to show a dominant purpose to make the power of disposal secondary to the creation of the life estate, then no fee follows. Counsel for appellant makes the point that since, by the terms of the wills involved here, the power of disposal is restricted to the lifetime of the first taker, the dominant purpose to create only a life estate is shown. We cannot agree with this conclusion for the reason that we believe it is in conflict with our cases of *Surety Company* v. *Jarrett*, 95 W. Va. 420, 121 S. E. 291, 36 A. L. R. 1171, and *Morgan* v. *Morgan*, 60 W. Va. 327, 55 S. E. 389, 9 Ann. Cas. 943. In each of these cases, the power of disposal was limited to the lifetime of the first taker. In each case, the power of disposal was held to be absolute, creating a fee.

We are convinced that the dominant intent of the testator in each of the wills made in April, 1926, by the Husteads, was to give the first taker the absolute and unrestricted power of disposal, and that the intent to vest an interest after the death of the first taker in Ada M. Hustead, is clearly subordinate to the power of disposal. When Lewis C. Hustead, in his will, used the following language, "she to have the right and privilege to use, sell, or dispose of the same as she may see fit during her lifetime," he certainly had in mind no limitation whatever upon the right of his wife to entirely use and to entirely consume such property as he might leave to her. The language which immediately follows clinches this intention: "* * * but any personal property or real estate remaining at her death shall by this will become the property of my daughter, Ada M. Hustead." The purpose here is perfectly clear to make the rights of Ada M. Hustead depend upon whether any property remains after the power of disposal of the first taker has been exercised. If the first taker should "see fit" to alienate and consume it all, then there is not "any * * * remaining" for the second proviso to take hold on. The intention seems perfectly clear to place any part or all of the testator's estate absolutely and unconditionally at the disposal of the first taker, and to make the rights of the second taker depend entirely upon what may be done with the property by the first taker. This being the plain dominant intent, we believe that it necessarily follows under our cases that a fee in the first taker results.

We are well aware of the fact that for many years this state and the state of Virginia stood out against the overwhelming weight of authority on this question. Both states now have statutes bearing upon the matter, the West Virginia statute not yet having been construed by this court. It is to be hoped that it may be the means of freeing the courts of the state from adherence to an ancient rule, the effect of which is to defeat in part the apparent purpose of the testator.

Having reached the conclusion that each of the Hustead wills operates to vest an unlimited fee in the first

taker, the result necessarily follows that Ada M. Hustead has no enforceable rights in the case before us. The proof tendered falls far short of coming within any rule that would permit it to control over the recognized meaning of the language used in the wills. For this reason, the decree of the circuit court of Harrison County will be affirmed.

*Affirmed.*